**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 3:25-cr-27 |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | District Judge Walter H. Rice |
| | : | Magistrate Judge Peter B. Silvain, Jr. |
| ERNESTO VILLALOBOS, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## REPORT AND RECOMMENDATION[1]

This matter is before the Court on Plaintiff United States of America's Motion to Revoke Bond Order (Doc. #13). Defendant Ernesto Villalobos opposes the Motion. Having considered the evidence *de novo*, the undersigned **RECOMMENDS** that the Court **GRANT** the Government's Motion and order Defendant detained pending further proceedings in this case.

### I.    Background

On March 25, 2025, the Grand Jury returned an Indictment charging Defendant Villalobos with (1) knowing and intentional conspiracy to possess with intent to distribute and to distribute: 400 grams or more of a mixture or substance containing a detectable amount of fentanyl; 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine; and 5 kilograms or more of a mixture or substance containing cocaine, all Schedule II controlled substances, in violation of 21 U.S.C. §§ 846 and 841(b)(1); (2) Knowing and intentional distribution of 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of 21 U. S. C. §§ 841(a)(1) and

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendation.

841(b)(1)(A); (3) Knowing and intentional distribution of 400 grams or more of a mixture or substance containing a detectable amount of fentanyl, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A); (4) Knowing and intentional distribution of 400 grams or more of a mixture or substance containing a detectable amount of fentanyl, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A); and (5) Knowing and intentional distribution of 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). (Doc. #8). Defendant Villalobos was arrested and brought before Magistrate Judge Pedro V. Castillo on April 2, 2025, for an initial appearance and detention hearing in the Central District of California. (Doc. #14). Judge Castillo ordered that Defendant be released on a $20,000.00 appearance bond with pretrial supervision. (Doc. #14-4, *PageID #*s 61-66).

On April 16, 2025, the Government filed its Motion to Revoke Bond Order. (Doc. #13). The Government asks that the Court revoke the Central District of California's determination and order Defendant detained pending further proceedings in this Court. *Id.* On the same day, Defendant Villalobos appeared before the undersigned for an initial appearance and arraignment. The undersigned set a hearing for April 17, 2025, regarding the Government's Motion and ordered that Defendant Villalobos be detained pending the hearing. (Doc. #16).

On April 17, 2025, the undersigned held a hearing regarding the Government's Motion to Revoke Bond. Defendant and his counsel, Peter Certo, were present during the hearing. Assistant United States Attorneys Elizabeth McCormick and Nick Dingeldein appeared for the Government.

The Government presented exhibits and made argument advocating that Defendant be detained pending trial in this matter. The Government asserted that although the Indictment

2

charges Defendant with crimes beginning in January 2024, there is evidence acquired from a search of Defendant's phone that he has been engaged in trafficking since June 2020. Specifically, the Government's exhibits contained photographs from June 2020 of large quantities of money allegedly acquired from drug transactions Defendant perpetuated and a photograph from October 2020 of Defendant posing with large quantities of money. The Government also presented more recent photographs from Defendant's phone of suspected cocaine or fentanyl kilogram bricks, 563 grams of suspected cocaine or fentanyl powder, and large quantities of marijuana. Additionally, the Government argued that, while Defendant has been unemployed for the past eight years, there has been over $400,000.00 in transactions made between his and family members' CashApps that are tied to drug transactions. The Government provided screenshots of CashApp transactions between Defendant and a co-conspirator, who is currently in custody.

The Government emphasized the seriousness of the charged offenses and provided exhibits of a Staples Center shipping receipt allegedly sent by Defendant to Columbus, Ohio, with a package content's description matching other seized packages of drugs. The Government argued that Defendant has been videoed shipping the packages containing drugs from the Staples Center, and that he has sent his son to make the shipment on one occasion. Additionally, the Government contended that Defendant's residence in California would not be an acceptable residence for Defendant to return on bond, as Defendant allegedly used the residence for drug trafficking.

Defendant's counsel argued that the presumption in this case had been rebutted, as demonstrated by the finding of Judge Castillo to release Defendant on bond. He emphasized that Defendant does not have a criminal record, had not violated his bond for the two weeks between Judge Castillo's hearing and Defendant's initial appearance in the Southern District of Ohio, and he had voluntarily appeared in this Court as ordered. Defendant's counsel argued three positions

3

to the Court: that the cash bond be maintained as is, that Defendant be released on his own recognizance to return to California to address personal matters but have another hearing scheduled before the Court, or that Defendant would have an opportunity to establish a residence within this district for the pendency of the case against him.

## II.    Standard of Review

As relevant here, 18 U.S.C. § 3145(a) provides:

> If a person is ordered released by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court--
> (1) the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release ….

The district judge reviews the decision to release or detain the defendant *de novo*.[2] *United States v. Yamini*, 91 F. Supp. 2d 1125, 1128 (S.D. Ohio 2000) (holding that although the Sixth Circuit has yet to address this issue, the majority of circuits hold that *de novo* review is appropriate); *see also United States v. Rosello*, No. 1:21-cr-7, 2021 WL 5759142, at *1 (S.D. Ohio Dec. 4, 2021); *United States v. Tolbert*, Nos. 3:09-CR-56 & 3:10-CR-30, 2017 WL 6003075, at *4 (E.D. Tenn. Dec. 4, 2017). "[M]eaningful *de novo* review means that the district court should engage in the same analysis, with the same options, under § 3142 as the magistrate judge." *Yamini*, 91 F. Supp. 2d at 1129; *Tolbert*, 2017 WL 6003075, at *4 (observing that the district judge has discretion to consider additional evidence to that presented at the original detention hearing).

To determine *de novo* whether Defendant Villalobos should be released or detained

---

[2] "Although a magistrate judge cannot review another magistrate judge's decision to release a defendant, a district judge may refer the Government's motion to revoke a release order to a magistrate judge for report and recommendation." *United States v. Wilcox*, No. 3:24-CR-71-KAC-JEM, 2024 WL 3749856, at *9 (E.D. Tenn. July 23, 2024), *report and recommendation adopted,* No. 3:24-CR-71-KAC-JEM-1, 2024 WL 3747146 (E.D. Tenn. Aug. 9, 2024) (citing *United States v. Shaw*, No. 5:17-CR-26, 2017 WL 5711438, at *2–3 (E.D. Ky. Nov. 17, 2017), *adopted by* No. 5:17-CR-26, 2017 WL 5710443 (E.D. Ky. Nov. 27, 2017)).

pending trial, the undersigned must first examine whether the presumption of detention set forth in 18 U.S.C. § 3142(e)(3) applies in this case, and if so, whether Defendant rebutted the presumption. If rebutted, the undersigned must then weigh the factors set out in 18 U.S.C. § 3142(g), along with the rebutted presumption, to determine if release on conditions will reasonably assure Defendant's appearance at court proceedings and the safety of any person and the community. The Court examines whether clear and convincing evidence shows Defendant to be a danger to the community and/or whether a preponderance of the evidence shows him to be a flight risk and, if so, whether conditions can mitigate that danger or risk of nonappearance.

### III. Discussion

In this case, due to the crimes charged, a rebuttable presumption applies that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community. 18 U.S.C. § 3142(e)(3); *see United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) ("A grand jury indictment, by itself, establishes probable cause to believe that a defendant committed the crime with which he is charged." (citing *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985))). This presumption places the burden of production with Defendant. *Id.* at 945. Although Defendant's burden to rebut the presumption "is not heavy[,]" Defendant must come forward with some evidence. *Id.* at 945-46.

In connection with the *de novo* proceedings in this Court related to the Government's Motion to Revoke Bond, the undersigned questions whether Defendant Villalobos has met his burden to rebut the presumption. Defendant's counsel argued that his appearance in the Southern District of Ohio—at Defendant's own expense—is evidence in support of his release. While his appearance weighs in his favor, unlike at his detention hearing in California, Defendant Villalobos has no ties to the Southern District of Ohio. Although his counsel suggested that Defendant may

5

obtain a residence in Ohio, at this time, he has not done so.  As to the safety of the community, Defendant's counsel argued that Defendant's lack of criminal history and the absence of firearms or violence rebut the presumption.  However, the house that Defendant seeks to return to in California is the same house where Defendant allegedly prepared drug shipments.  In sum, although Defendant's burden to rebut the presumption is not heavy, the undersigned finds that Defendant did not meet his burden to rebut the statutory presumption.

However, assuming *arguendo* that Defendant did rebut the presumption, under the law of the Sixth Circuit, if a defendant rebuts the presumption, the Court still must consider the presumption in its determination of whether conditions exist that could assure community safety and the defendant's appearance as required. *United States v. Hinton*, 113 F. App'x 76, 78 (6th Cir. 2004); *see also Stone*, 608 F.3d at 945 (explaining that even when a defendant meets the burden of production, the Court must continue to weigh the presumption that detention is appropriate along with the other factors).

Thus, the undersigned will also address the § 3142(g) factors.  First, the undersigned considers the nature and circumstances of the charged offenses.  18 U.S.C. § 3142(g)(1).  The Indictment charges Defendant Villalobos with possessing and conspiring to distribute a large amount of fentanyl, which is a particularly dangerous controlled substance.  (Doc. #8); *see United States v. Taylor*, 449 F. Supp. 3d 668, 673 (E.D. Ky. 2020) (finding fentanyl to be an "exceptionally dangerous drug" under § 3142(g)(1)); *see also United States v. McCollum*, No. 3:21-CR-35, 2021 WL 4468937, at *2 (E.D. Tenn. Sept. 29, 2021) (upholding magistrate judge's finding that fentanyl is a particularly dangerous drug under § 3142(g)(1)).  Additionally, the Indictment charges Defendant with possessing and conspiring to distribute a large amount of methamphetamine and cocaine—both dangerous controlled substances.  Moreover, based on the

6

charges in this case, Defendant faces a very lengthy prison sentence if convicted—a mandatory minimum of ten years, and up to life in prison. The undersigned finds that the nature and circumstances of the offenses show that Defendant Villalobos presents a serious danger to the community. *See* 18 U.S.C. § 3142(g)(1).

The second factor—weight of the evidence regarding both Defendant's dangerousness and risk of nonappearance—also favors detention. 18 U.S.C. § 3142(g)(2). This factor "goes to the weight of the evidence of dangerousness [and risk of nonappearance], not the weight of the evidence of the defendant's guilt." *Stone*, 608 F.3d at 948; *see also United States v. Villegas*, No. 3:11-CR-28, 2011 WL 1135018, at *8 (E.D. Tenn. Mar. 25, 2011) ("In other words, this factor goes to how convincing the government's arguments of dangerousness and risk of flight are." (citation omitted)).

As noted during the hearing, Defendant has no ties to the Southern District of Ohio, heightening the risk of nonappearance in this District. Moreover, if permitted to return to California, Defendant has confirmed that he has an aunt who resides in Mexico. Although Defendant reported to Pretrial Services that he currently does not have contact with his aunt, given the close proximity of California to Mexico, this weighs against Defendant's release. Additionally, the Government presented evidence alleging that Defendant's friends and family in California have directly facilitated his alleged drug trafficking. Thus, if released—even on GPS monitoring—the Government convincingly argued that Defendant might continue to receive his friends and family assistance in additional drug trafficking.

Next, the undersigned must consider a host of factors relating to the history and characteristics of the defendant. 18 U.S.C. § 3142(g)(3)(A). Defendant has no prior criminal history, and there is no evidence that he has ever failed to appear in court. Indeed, as Defendant's

7

counsel pointed out, Defendant flew himself and his family to Ohio to appear in Court.

Although Defendant is a lifelong resident of California and has both siblings and adult children who reside there, he does not have any community ties to this District. Defendant reported to Pretrial Services that he has been unemployed for eight years. This is troubling in light of the photographs on Defendant's phone of large amounts of cash, one of which includes Defendant posing with the cash, as well as significant monetary transactions on CashApp. Additionally, although he stated that he is receiving disability checks, he also told Pretrial Services that he did not have any physical or mental disabilities. Finally, Defendant reported a history of marijuana and cocaine use, beginning when he was 18 years old. Notably, Defendant indicated that he last used cocaine one year ago and marijuana eight years ago.

As for "the nature and seriousness of the danger to any person or the community that would be posed by the person's release," 18 U.S.C. § 3142(g)(4), the undersigned finds that the danger Defendant presents to the community is continued significant drug trafficking. Defendant is alleged to have participated in a conspiracy to possess with intent to distribute large amounts of Schedule II controlled substances (over 400 grams of fentanyl, 500 grams of methamphetamine, and 5 kilograms of cocaine). (Doc. #8). Moreover, he is alleged to have actually distributed similarly large amounts of these drugs (500 grams of methamphetamine, 400 grams of fentanyl, 400 grams of fentanyl, and 500 grams of methamphetamine). *Id.* Further, the Government presented photos from Defendant's cell phone, which law enforcement searched pursuant to a federal warrant, that suggest Defendant's drug trafficking activity began as early as June 2020. These photos included large quantities of cash and bricks of suspected cocaine and fentanyl allegedly in Defendant's possession. Significantly, as previously noted, the Government presented evidence that Defendant has utilized friends and family for distribution of illegal drugs.

Thus, if released on bond, the Government asserts that Defendant could continue to rely on his friends and family to distribute the illegal drugs. The undersigned accepts the Government's premise that this shows that Defendant continues to present a particular danger to the community—that is, continued drug trafficking—if he were released. *See Hernandez*, 2002 WL 1377911, at *2 (holding that "the risk of continued drug-trafficking while released on bail constitutes a significant danger to the safety of the community").

In sum, for the reasons stated at the hearing and described above, and based upon the evidence before the Court at the time of the hearing, the Court finds that the Government met its burden of proving by a preponderance of the evidence that no condition or combination of conditions will reasonably assure Defendant's appearance at required court appearances if he is released. The Court also finds that the Government met its burden of proving by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of other persons and the community if Defendant is released.

Therefore, the undersigned **RECOMMENDS** that the Court **GRANT** the Government's Motion to Revoke (Doc. #13) and order Defendant Villalobos detained pending further proceedings in this Court.

April 18, 2025                                    *s/Peter B. Silvain, Jr.*
                                                  Peter B. Silvain, Jr.
                                                  United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Crim. P. 59(b)(2), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).